IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**RODRIQUEZ PORTER,**
   **Plaintiff,**

vs.               3:03cv595/MCR/MD

**TRANS UNION LLC,**
   **Defendant.**

## REPORT AND RECOMMENDATION

This case filed pursuant to 15 U.S.C. § 1681b(2) and 1681n is now before the court upon the defendant's motion for summary judgment, supporting memorandum and attachments (doc. 48). The pro se plaintiff filed an answer to defendant's motion for summary judgment (doc. 60), the defendant filed objections to plaintiff's summary judgment evidence (doc. 63) and plaintiff filed a response thereto. (Doc. 65). Upon review of the submissions of the parties, it is the opinion of the undersigned that the defendant's motion for summary judgment should be granted.

## Background

In his amended complaint (doc. 21) (henceforth "complaint"),[1] plaintiff alleges that in January of 2003, he sent $9.00 to the defendant Trans Union LLC "Trans Union" for a copy of his credit report and score. Plaintiff states that when he did not receive a response from Trans Union after 3 months, he sent a single letter of

---

[1]The allegations in this complaint were sworn under penalty of perjury on March 1, 2002. The original complaint was filed on January 25, 2002.

inquiry, to which the defendant failed to respond. Because he did not receive a copy of his report, plaintiff claims to have suffered from "mental stress and anguish from an increased, almost phobic, feeling that his identify may actually have been stolen." (Doc. 21 at 3). In this action, plaintiff seeks to recover the cost of the credit report he never received, the costs associated with filing this case, compensation for the mental stress and anguish he contends he suffered as a result of the defendant's failure to supply the requested credit report, and punitive damages, for a total of $195,252.75.

Defendant has moved for summary judgment, claiming that plaintiff can not establish that it violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Plaintiff opposes the motion.

## Summary Judgment Standard

On a motion for summary judgment, this court must evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendant's motion only if the record demonstrates that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56. Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Finally, it is improper for the district court to

make credibility determinations on a motion for summary judgment.  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

**Legal Analysis**

Plaintiff maintains that his complaint arises under 15 U.S.C. § 1681b(2) and 15 U.S.C. § 1681n.  Title 15 U.S.C. § 1681b(a)(2), to which plaintiff presumably intends to refer, provides that any "consumer reporting agency may furnish a consumer report . . . in accordance with the written instructions of the consumers to whom it relates."  Defendant suggests that plaintiff's claim actually relates to § 1681g, which pertains to disclosure of credit reports and files to consumers.  This section identifies the information that must be produced to consumers, and provides the parameters for the summary of rights that must be included with disclosures.

Title 15 U.S.C. § 1681n governs civil liability for willful noncompliance.  It provides:

 (a) In general
Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

The defendant maintains that it did not violate any provision of the FCRA.  Plaintiff asserts that the defendant's failure to respond to his request for credit disclosure was in violation of the Act.  Title 15 U.S.C. § 1681g(a) obligates credit

reporting agencies upon request and subject to section 1681h(a)(1) to clearly and accurately disclose "[a]ll information in the consumer's file at the time of the request." Section 1681h(a)(1) provides that consumer reporting agencies shall require that the consumer furnish proper identification before the report is provided.

Thus, to show a violation of the FCRA, plaintiff must establish the following:

(1) Trans Union maintained a file on him (15 U.S.C. § 1681g);

(2) Plaintiff requested disclosure of this file, accompanied by proper identification (15 U.S.C. § 1681h) and proper payment. (15 U.S.C. 1681j(f); 67 Fed. Reg. 2002 WL 31814297);

(3) Trans Union failed to provide the requested disclosure (15 U.S.C. § 1681g);

(4) Trans Union's failure to provide the disclosure was either willful or negligent (15 U.S.C. § 1681n or o)[2];

(5) Plaintiff was actually damaged and the damage was caused by Trans Union.

Defendant contends that plaintiff's claim must fail and it is entitled to summary judgment for myriad reasons. First, Trans Union has verified that it does not maintain a credit file on the plaintiff. (Doc. 48, exh. A, ¶ 16). Defendant Trans Union explains that this could be due to a number of factors, including plaintiff's incarceration or a decision to abstain from obtaining credit. (Doc. 48, exh. A, ¶ 17). Absent the existence of such a file, there was nothing for the defendant to produce. *Cf. Ben-Hur v. Equifax Information Services, Inc.*, 976 F.Supp. 795, 806 (E.D. Wis. 1997) (credit reporting agency did not violate 15 U.S.C. § 1681g for not providing consumer a report it no longer had). And, "[a] consumer reporting agency is not required to create new files on consumers for whom it has no file." *Davis v. Equifax Information Services*, 346 F.Supp. 2d 1164, 1172 (N.D. Al. 2004). Plaintiff's claim in this case is not that he received an inaccurate report or that inaccurate information

---

[2] Although plaintiff specifically cites the statutory provision dealing with willful violations, in other portions of this complaint he refers to Trans Unions's "willful, callous, *negligent* and recklessly indifferent treatment of the plaintiff." Thus, the court incorporates the statutory provision dealing with negligence.

*Case No: 3:02cv25/RV/MD*

was reported to a third party, rather plaintiff's claim is that the defendant did not provide him with a copy of his credit file. Plaintiff does not dispute defendant's assertion that it maintained no such file. He does complain that the defendant should have more promptly responded to his inquiries.

With respect to the fact of plaintiff's request for disclosure, the defendant does not dispute that plaintiff requested his credit file, or that he included the proper payment. However, it argues that plaintiff failed to provide proper identification and failed to cooperate with Trans Union's attempts to obtain additional identifying information so it could search for the file. The declaration of Eileen Little, a Consumer Relations Group Manager for Trans Union, indicates that based on the information provided by the plaintiff with his request for a credit disclosure, Trans Union could not locate a credit file for the plaintiff. (Doc. 48, exh. A, ¶ 4). Therefore, defendant sent a letter to plaintiff requesting that he provide proof of his address, but received no response. (Doc. 48, exh. A1). On May 12, 2003, plaintiff sent Trans Union another letter requesting a copy of his credit file. Even based on the new information, Trans Union could not locate a credit file. (Doc. 48, exh. A ¶ 6). It sent a letter to plaintiff on May 15, 2003 explaining that it needed additional verifying information, and this letter was returned by the U.S. postal service on June 5, 2003. (*Id.* at ¶ 7).

Plaintiff notified Trans Union of a change in his address on January 8, 2004. (Doc. 48, exh. A3). On January 14, 2004, Trans Union sent plaintiff yet another letter at the new address advising that it had not been able to locate a credit file based on the information plaintiff had provided and advising that it would recheck its records if plaintiff would provide additional verifying information. (*Id.,* exh. A6). Plaintiff notified the defendant that suit had been filed in this court, (*id.*, exh. A5), and after receiving a copy of plaintiff's application to proceed without prepayment of fees and affidavit, (*id.,* exh. A8), Trans Union sent plaintiff another letter on February 18, 2004

requesting verification of plaintiff's address. (*Id.*, exh. A9). Again, it received no response.[3]

On August 16, 2004, a letter was sent to plaintiff from the office of counsel for Trans Union, requesting that plaintiff provide his social security number and former address. (Doc. 48, exh. B1). Plaintiff finally responded by letter dated August 20, 2004. When Trans Union received this additional information, it reviewed its files, verifying without a doubt that it does not maintain a credit file for the plaintiff. Therefore, on November 30, 2004, defendant, through counsel, attempted to refund plaintiff's money. (Doc. 48, exh. B4). Plaintiff responded, indicating that a refund of $9.00 was not sufficient to voluntarily dismiss the case, although he would be open to discussing a "reasonable" settlement. (*Id.*, exh. B5). He returned the defendant's $9.00 check. Trans Union argues that it is entitled to summary judgment because it acted reasonably in handling plaintiff's request, given the circumstances with which it was presented.

The FCRA is not a strict liability statute. *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1161 (11th Cir. 1991); *Davis v. Equifax Information Services*, 346 F.Supp. 2d 1164, 1171 (N.D. Al. 2004). Although there do not appear to be any cases directly on point involving a reporting agency's inability to locate a consumer's credit file, an underlying requirement of "reasonableness" runs through other cases involving the duties of credit reporting agencies. "A credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate information in the consumer's credit report." *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994); *Cahlin,* 936 F.2d at 1156 (agency escapes liability if it establishes that an inaccurate report was generated by following reasonable procedures); *see also Davis,* 346 F.Supp.2d at

---

[3]Plaintiff's interrogatory responses indicate that he received the letter but chose not to respond because it had arrived over a year after his initial request and after he had filed this case. (Doc. 48, exh. C at 5).

1171 (applicable standard of care under FCRA is how a reasonably prudent person would have acted under the circumstances), citing *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982).  Trans Union argues that the record reflects that it attempted several times to obtain additional information from the plaintiff so it could locate his file, and, having been unsuccessful, it could not determine that it had no file on plaintiff or offer him a refund until regular correspondence was established, which only happened post suit and through counsel.

      Plaintiff claims that whether the defendant sent the letters of inquiry in question is a material fact in dispute in light of his assertion that he did not receive said letters.  He suggests that the letters were not actually created on the dates reflected on the letters, or in the alternative that they were not actually sent.  Eileen Little's declaration, which was sworn under penalty of perjury, contradicts plaintiff's conclusory assertion, at least with respect to recent fabrication. She states that these records "were made at or near the time of the occurrence of the matters set forth in the attached records by, or from information transmitted by, a person with knowledge of those matters..." and that they "were made in the course of regularly conducted business activities of Trans Union and as a regular practice of Trans Union."  (Doc. 48, exh. A, ¶ 19).  Her declaration also states that the letters were "sent." The reasonableness of defendant's actions does not include a duty to exert control over the United States Postal Service to track whether seemingly routine letters it mails to consumers were received.

      Even assuming for sake of argument that plaintiff was correct that the documents were created after the fact or never mailed to the plaintiff, or the defendant's actions were in some other way unreasonable, which the court does not find, he cannot establish his entitlement to damages.  As noted above, the FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute.  15 U.S.C. §§ 1681n &

1681o.  The reporting agency is liable for "actual damages" sustained, including the costs of the action, attorneys fees, and where appropriate, punitive damages. However, proof of damage is an essential element of an action under the FCRA. *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 473 (2nd Cir. 1995) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991); see also *Pettus v. TRW Consumer Credit* Services, 879 F.Supp. 695, 697-98 (W.D. Tex. 1994) (citing *Hyde v. Hibernia National Bank*, 861 F.2d 446, 447 (5th Cir. 1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 706 (1989); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991)(plaintiff has affirmative duty to come forward with evidence of actual damage); *Zeller v. Samia*, 758 F.Supp. 775, 778 n. 1 (D.Mass.1991) (plaintiff must show that damages were proximately caused by violation of the Act)).  In this case, plaintiff claims four different kinds of damages:  the $9.00 fee he sent for a copy of the report; mental stress and anguish; reimbursement for legal research, photocopies and recopying of pages; and punitive damages.

The defendant is permitted by statute to charge a reasonable fee for a credit disclosure.  15 U.S.C. §§ 1681g, 1681j.  This fee is currently set at $9.00. After verifying that it maintained no credit file on the plaintiff, the defendant attempted to return the fee to him.  As noted above, plaintiff returned the check to the defendant. Therefore, because defendant attempted to unconditionally refund the plaintiff's money, to the extent plaintiff was "damaged" by the loss of the $9.00 fee, his damages are of his own doing.

Under some circumstances, a plaintiff is entitled to recover damages for mental stress and anguish for violations of the FCRA.  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369-371 (5th Cir. 2001). To recover such damages, a plaintiff must show more than mere feelings of frustration, anger or irritation.  *Id.*  (Citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996)).  And, there must be record evidence of the emotional distress.  To recover damages for such an intangible loss

requires a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the award. *Cousin*, 246 F.3d at 371; *see also Spector v. Equifax Inf. Services*, 338 F.Supp.2d 378, 386 (D.Conn. 2004) (noting that only plaintiff's deposition testimony even marginally corroborated his claim). In *Spector*, the defendant had taken plaintiff's credit file "off line" after it was sued by him. The *Spector* plaintiff twice wrote to Equifax after he was denied credit, requesting copies of the credit report, but did not receive a response. He claimed as damages both the postage incurred in making the request and "emotional distress." The emotional distress about which plaintiff Spector testified in his deposition was decidedly minimal. He essentially stated that he had some sleepless nights, anxiety and continuing annoyance over the problem. 338 F.Supp. 2d at 383-84. The *Spector* court referred to the Second Circuit's decision in *Casella, supra.* It noted that court's conclusion that "corroborated affidavit testimony alleging severe emotional distress from knowing one's credit report contains inaccurate and damaging credit information failed to raise a genuine issue of material fact because, absent evidence of dissemination of the inaccurate information to potential creditors or others, there was no causal link between the alleged emotional distress and the alleged FCRA violations, i.e., preparing of an inaccurate credit report and refusal to delete the false information or include a statement of dispute after being notified by plaintiff of the inaccuracy." *Spector,* 338 F.Supp.2d at 386 (citing *Casella*, 56 F.3d at 474-75). The harm in *Casella*, disclosure of inaccurate credit information without the consumer being afforded the opportunity to respond, was the same as that feared in *Spector*. In *Spector*, as in the instant case, the consumer only *suspected* that his report contained inaccurate information. The court concluded that only upon <u>release</u> of the inaccurate information is the harm feared by the consumer potentially realized and thus actionable. 338 F.Supp.2d at 386. In the case at bar, plaintiff sought a copy of his credit report to ascertain the status of his credit as it

would relate to his plans to open a business upon his release from prison.[4] When he did not promptly receive a copy of the report, plaintiff states that he was "wondering whether he had been the victim of identity theft" and felt like Trans Union had ignored his requests because he was black and incarcerated, which made him feel like a non-person. (Doc. 60 at 8). He also indicates that he felt humiliation. (Doc. 60, exh. 1 at 2). Therefore, in this case, there not only was no release of inaccurate information, but also, because of the absence of a credit file, there was no information to release. And finally, there was no individual or entity (other than the plaintiff) authorized and waiting to receive the information. Plaintiff does not allege that he was denied credit, see *Thompsons v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982), or that he was prevented from making plans for after his release. Therefore, the allegedly improper failure to disclose cannot be causally linked to the plaintiff's claimed emotional distress due to speculative concerns over identity theft.[5]

Plaintiff has also sought to recover fees for time spent on legal research and time spent recopying his complaint at the rate of $20.00 per hour. Pro se litigants are not entitled to recover fees for the time spent litigating their cases. *See, e.g., Celeste v. Sullivan*, 988 F.2d 1069, 1070 (11th Cir. 1992) (pro se litigant not entitled to recover attorneys fees under the Equal Access to Justice Act) (citing *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 1436-37, 113 L.Ed.2d 486 (1991) (pro se litigants who is not an attorney may not recover attorneys fees under 42 U.S.C. § 1988); *Cofield v. City of Atlanta*, 648 F.2d 986, 987-88 (5th Cir.1981) (no fees for pro se litigants under § 1988); *Clarkson v. IRS*, 811 F.2d 1396, 1397 n. 2 (11th Cir.1987) (no fees for pro se litigants under Privacy Act)); *Dumdei v. Certified Financial Planner Bd. Of*

---

[4]According to the Department of Corrections website, plaintiff's tentative release date is not until December of 2010. www.dc.state.fl.us/ActiveInmates.

[5]Additionally, the court notes that in *Spector*, the plaintiff had been denied credit and thus had reason to believe there were inaccuracies in his report. In this case there is nothing in the record to suggest that plaintiff's fears of identify theft were anything other than the product of an overactive imagination.

Case No: 3:02cv25/RV/MD

*Standards, Inc.,* 1999 WL 787402 (N.D. Tex. 1999) (citing *Barrett v. Bureau of Customs*, 651 F.2d 1087 (5th Cir. 1981); *Cofield v. City of Atlanta*, 648 F.2d 986 (5th Cir. 1981)); see also *Gaines v. Bausch & Lomb Pharmaceutical Corp.*, 1994 WL652835 (M.D. Fl. 1994) (litigant may not recover for attorneys fees he has not incurred or in personal time spent litigating a case).  Therefore, plaintiff would not be entitled to recover such damages.

Finally, absent evidence of a willful violation, which he has failed to present, plaintiff is not entitled to punitive damages. Plaintiff has presented only abject speculation in support of his contention that there was any attempt on the part of the defendant to willfully violate the FCRA.

In sum, plaintiff has failed to establish as a matter of law that the defendant violated the FCRA or that he is entitled to any damages, and the defendant is entitled to summary judgment.

Accordingly, it is respectfully RECOMMENDED:

That defendant's motion for summary judgment (doc. 48) be GRANTED, and that the clerk be directed to enter judgment in favor of the defendant and close the file.

At Pensacola, Florida, this 25TH day of March, 2005.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**